**R. Clark ARNOLD, Petitioner,**

v.

**UTAH STATE BAR ASSOCIATION, Respondent.**

No. 970300.

Supreme Court of Utah.

Oct. 3, 1997.

R. Clark Arnold, Salt Lake City, pro se.

John Baldwin, Katherine A. Fox, Salt Lake City, for the State Bar. .

DURHAM, Justice:

Petitioner R. Clark Arnold, a member of the Utah State Bar, has asked this court to review and overturn an action taken by the Board of Bar Commissioners. In April of this year, the Board approved a contribution of "up to $250,000" from the general Bar funds for improvements to the new Scott M. Matheson Courthouse, which is under construction in Salt Lake City. The funds were designated for use in improved furnishings for an attorney conference room and numerous attorney-client interview rooms in the courthouse. After this petition was filed, upon stipulation, this court entered an order restraining any disbursement of the funds in question until further order of the court.

Subsequent to its approval of the contribution, the Board took a number of steps to fund it. A notice to Bar members was published in the *Utah Bar Journal*, and a letter was sent in conjunction with the upcoming dues billing cycle. The notice and letter described the size and purpose of the contribution, including the pro rata amount attributable to each Bar member. The letter also contained an "opt-out" card for use by any member who did not want to participate in the contribution. The total "target" contribution of $250,000 will be reduced by the Board to account for all of the nonparticipating Bar members. Aside from the internal record keeping necessary for these computations, the choice of any individual Bar member to participate or not will be confidential and not known either to the Board or to any persons or entities outside the Bar offices.

Petitioner challenges the authority of the Board to approve this contribution and the adequacy of the procedures it followed. He asks this court to set aside the Board's decision and to require that the Board seek approval for it under the procedures of rule 11–101 of the Code of Judicial Administration.

In the case of *Barnard v. Utah State Bar*, 804 P.2d 526 (Utah 1991), this court described the nature of the integrated Bar as follows:

The Bar is an organization that is *sui generis*. It does not exist to "participate in the general government of the State, but to provide specialized professional advice to those with the ultimate responsibility of governing the legal profession." In addition, the Bar exists to promote the administration of justice in a variety of ways and to enhance professional competence through the dissemination of knowledge of legal principles. It also provides a number of services to the public and to practicing lawyers.

. . . .

... The Bar is funded completely by the dues and fees paid by its members and Bar applicants; it receives no public funds or tax revenues. It exists independently of the legislative and executive branches of state government.

*Id.* at 529–30 (citations omitted).

We also noted in *Barnard* that although the Bar is "subject to the supervision of the Utah Supreme Court, it is in large part self-governed by Bar commissioners who are elected by Bar members." *Id.* at 530. The

court currently exercises its oversight by means of the Rules for Integration and Management of the Utah State Bar, as amended in 1995. The purposes of the Bar, as set forth in those rules, include "aid[ing] the courts in carrying on the administration of justice"; "provid[ing] service to the public, to the judicial system and to members of the Bar"; and "assist[ing] members of the Bar in improving the quality and efficiency of their practice." Rules for Integration and Management of the Utah State Bar, Rule A.1.b, i, & k (on file with the Utah State Bar). Rule C.2 delegates to the Board of Bar Commissioners "all powers necessary and proper to carry out the duties and responsibilities of the Bar and the purposes of these rules" and "all authority which is not specifically reserved to the Court." *Id.* at C.2. The specifically reserved powers listed relate to admission and licensure fees, admissions, professional conduct, the client security fund, fee arbitration, discipline and disability, legislative activity, Bar examination review and appeals, and the unauthorized practice of law.

 Petitioner has not cited any provision of the Rules of Integration that would prohibit the actions taken by the Board in connection with this decision, and it appears to us that the decision is well within the authority of the Board as contemplated by the rules.[1] Petitioner also notes, however, that this court adopted a number of formal recommendations contained in the "Final Report of the Utah Supreme Court's Special Task Force on the Management and Regulation of the Practice of Law," dated November 1, 1991. We did so in 1992, and petitioner argues that several of those adopted recommendations bear on the actions of the Board in this case. He cites to recommendation 8, which provides:

The following shall be disclosed to Bar members, and review by the Court shall occur only upon petition:

(1) the Bar's annual budget;

(2) the amount of annual mandatory dues;

(3) the establishment of new programs or functions that are to be supported, in whole or in part, by the mandatory dues of Bar members;

(4) changes in the Bar's Articles of Incorporation and Bylaws; and

(5) the incurrence of any debt or obligation of $50,000 or more for a period longer than the fiscal year in which the debt or obligation is incurred.

Final Report, Utah Supreme Court's Special Task Force on the Management and Regulation of the Practice of Law, pt. VI, at 35 (Nov. 1, 1991).

 When the court adopted this recommendation, we specified that the disclosure required should occur "in advance of implementation," so that review by petition would be more practicable. Our adoption of recommendation 8 occurred in the context of serious financial and management problems being experienced by the Bar, which the Task Force was asked to address. The recommendation was designed to ensure long-term fiscal stability and accountability with respect to the Bar's operating budget and debt structure. The contribution in question here does not represent a new "program" or "function"; it is not a budget item establishing a service or program that will require ongoing support. It is a one-time expenditure, to be made from temporarily existing surplus funds, that will not have any future impact on the Bar's operations. We conclude that it does not represent the kind of item that requires advance disclosure under recommendation 8. We further note that the procedures for notice and "opt-out" provided by

1. Petitioner additionally claims that certain members of the Utah Bar have their Bar dues paid for them by the State of Utah (i.e., Attorney General's Office, etc.). Petitioner argues that the contribution of State-paid Bar dues to the Matheson Courthouse is improper. However, because all Bar dues, whether paid by individual attorneys, the State of Utah, or any other source, go directly into the general coffers of the Utah State Bar and are then disbursed under the supervision of the Board of Bar Commissioners, it is not helpful to differentiate between specific uses depending on specific sources for the funds. If revenues from Bar dues are properly spent it does not matter where they come from.

the Bar were entirely adequate to inform Bar members of the Board's decision.

The Board action in question here was a discretionary policy determination outside the scope of those areas in which this court has retained an explicit oversight function within the rules. Petitioner complains in his papers of several other such decisions of the Board, including decisions *not* to fund certain ongoing programs. He argues that the Board should have funded those services and refused to fund this contribution. In essence, he challenges the wisdom and the priorities of the Board members. We decline to undertake that kind of review. We have delegated a relatively broad scope of policy-making discretion to the Board, and we are not in a position to second-guess decisions made within the scope of that discretion that do not involve wrongdoing or fraud. The members of the Board of Bar Commissioners are accountable on such policy questions to the members who elect them. Under the Rules of Integration, our function is to scrutinize very closely any decisions that may jeopardize the fiscal security and proper operation of the Bar. *See* Rules for Integration and Management of the Utah State Bar, Rule C.2. This decision is not in that category.

Petitioner has identified a number of ways in which the current Rules of Integration may need attention and revision, including the possibility of a new publication format and some more explicit incorporation of the Task Force Recommendations adopted in 1992. We hope that he will forward those observations and suggestions to the appropriate advisory committee.[2] They are not properly before us in this context. We reject petitioner's suggestion that the Board's decision is covered by rule 11–101 of the Code of Judicial Administration, governing rule-making procedures; as described above, we regard it as an ordinary operating decision within the Board's discretion.

The order restraining implementation of the Board's decision is vacated, and this petition is denied.

STEWART, Associate C.J., and HOWE and RUSSON, JJ., concur in Justice DURHAM's opinion.

Having disqualified himself, ZIMMERMAN, C.J., does not participate herein.

---

2. The court currently has an Advisory Committee on the Rules of Professional Conduct, which also concerns itself with the rules of Lawyer Discipline and Disability. Whether the Rules of Integration also fall within that committee's jurisdiction is an open question that might be addressed by the Board and this court in a rule-making context.